**UNITED STATES of America, Plaintiff,**

v.

**HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES, INTERNATIONAL UNION, Defendant.**

**In re Appeal of John N. AGATHOS, Sr., Appellant.**

**Civil No. 95–4596(GEB).**

United States District Court, D. New Jersey.

May 6, 1997.

Kurt W. Muellenberg, Court Appointed Monitor, Special Master, Office of the Monitor of the Hotel & Restaurant Employees Intl. Union, Washington, DC, pro se.

Michael A. Chagares, U.S. Atty. Office, Newark, NJ, for U.S.

John N. Agathos, Sr., pro se.

## MEMORANDUM OPINION

BROWN, District Judge.

This matter comes before the Court on the appeal of John Agathos, Sr. from the October 16, 1996 and November 25, 1996 decisions of the Court Appointed Monitor Kurt W. Muellenberg. For the reasons set forth herein, the Court will affirm the Monitor's decisions.

## I. BACKGROUND

On September 5, 1995, this Court executed a consent decree in *United States of America v. Hotel Employees and Restaurant Employees Int'l Union,* Civ. No. 95–4596(GEB). The consent decree resolved that litigation, in which the United States claimed that organized crime groups had dominated the Hotel Employees and Restaurant Employees International Union ("HEREIU") for twenty-five years, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*

The consent decree appointed Kurt Muellenberg as Monitor, and gives him the power to investigate the HEREIU, to review and veto various HEREIU actions, and to bar individuals from seeking elected office therein. Consent Decree ¶¶ 8–10. The consent decree also provides that the Monitor may remove or otherwise discipline

any officer, representative, agent, employee or person holding a position of trust in the HEREIU and its constituent entities when such person engages or has engaged in actions or inactions which: (i) violate the injunctive prohibitions of this Consent Decree, (ii) violate any criminal law involving the operation of a labor organization or employee benefit plan, or (iii) further the direct or indirect influence of any organized crime group or the threat of such influence now or in the future.

*Id.* ¶ 12. With respect to members, the consent decree similarly provides as follows:

[T]he Monitor shall have the right and power to impose discipline up to and including expulsion from union membership when a member of the HEREIU or its constituent entities engages or has engaged in actions or inactions which: (a) violate the injunctive prohibitions of this Consent Decree; (b) violate any criminal law involving the operation of a labor organization or employee benefit plan; or. (c) further the direct or indirect influence of

any organized crime group or the threat of such influence now or in the future.

*Id.* ¶ 13.

The consent decree contains a detailed procedure by which the Monitor shall dispose of disciplinary charges against union officials and members. It explicitly states that the Monitor will first adjudicate the charges and render a final decision, pursuant to the rules generally applicable in labor arbitration proceedings. *Id.* ¶ 14. The consent decree provides:

> When exercising his/her disciplinary rights and powers, the Monitor shall afford the subject of the potential disciplinary action written notice of the charge(s) against him/her and an opportunity to be heard. The Monitor shall conduct any hearing on any disciplinary charges, render the final decision regarding whether discipline is appropriate and impose the particular discipline. The charged party shall have 20 days to answer the charges against him/her and may be represented by counsel at any hearing conducted by the Monitor.

*Id.* Only then may an aggrieved party appeal the Monitor's decision to this Court. *Id.* ¶ 15.

In or about September 1983, appellant Agathos became President of HEREIU Local 69 in Secaucus, New Jersey, and a trustee for the Local 69 Pension and Health and Welfare Funds (hereinafter "Local 69 Funds"). On or about January 22, 1996, the Monitor charged that Agathos, *inter alia,* knowingly associated with members or associates of an organized crime group from at least the 1970s until at least July 5, 1992 and beyond. *See Agathos v. Muellenberg,* 932 F.Supp. 636, 637 (D.N.J.1996). In response, Agathos filed an application for a declaratory judgment before this Court that the charge was outside the scope of the Monitor's jurisdiction under the consent decree because it sought to discipline him for conduct prior to execution of the consent decree. By Opinion dated May 3, 1996, this Court denied Agathos' application and dismissed Agathos' application for lack of jurisdiction since the Monitor had not yet rendered an appealable decision. *See id.* at 638.

On August 9, 1996, the Monitor served Agathos with a superseding charge which alleged that Agathos:

- Has in the past, and continues to knowingly associate with members and associates of the Genovese Crime Family ("GCF") an OCG [organized crime group], in violation of ¶¶ 12 and 13 of the Consent Decree and the HEREIU Constitution. (Charges I and II).

- Conspired to extort money from owner(s) of The Players Club while an officer of HERE Local 69, in violation of the Hobbs Act, 18 U.S.C. § 1951, the Taft–Hartley Act, 29 U.S.C. § 186, and ¶¶ 12 and 13 of the Consent Decree. (Charges III and IV).

- Engaged in conduct unbecoming a member which brought disrepute upon HERE Local 69 and the HEREIU, namely, assaulting Harry Klinghoffer, in violation of the HEREIU Constitution, pursuant to ¶ 14 of the Consent Decree. (Charge VI).

- Embezzled Local 69 monies, namely: (1) an indirect loan to himself in the amount of $6,077; (2) a salary increase in the amount of $22,862 annually from 1989 to the present; and (3) $16,688 for the payment of legal fees incurred in connection with an investigation conducted by the U.S. Department of Labor and the U.S. Department of Justice (hereinafter the "DOJ Investigation"), in violation of 29 U.S.C. §§ 503(a) and (c), ¶¶ 12 and 13 of the Consent Decree, and the HEREIU Constitution (Charges VIII, IX, X, XI, XIII and XIV).

- Permitted himself, a "barred person," under a May 4, 1993, court order permanently barring his participation in the affairs of the International Brotherhood of Teamsters ("IBT") and a January 20, 1987, conviction for the assault of Harry Klinghoffer, to serve as an officer of HERE Local 69 and Trustee of HERE Local 69 Pension and Health and Welfare Funds (hereinafter the "Funds"), in violation of ¶¶ 12 and 13 of the Consent Decree. (Charges V and VII).

November 25, 1996 Decision of the Monitor at 3–4. A hearing on the charges was held

on October 15, 1996. Although Agathos was called to testify as a witness, he refused to participate in the hearing, and left shortly after it commenced. By decision dated October 16, 1996, the Monitor found that as a result of Agathos' failure to participate in the hearing, the appellant violated the injunctive prohibition contained in the consent decree. The Monitor thus barred appellant "from holding office, a position of trust, and/or employment in HERE Local 69 and/or any of its constituent entities (including the Local 69 Health and Welfare and Pension Fund) for a period of two years." October 16, 1996 Decision of the Monitor at 4.

On November 25, 1996, the Monitor issued a written decision finding that each of the charges against appellant were proven. As a result, the Monitor permanently barred appellant from membership, office, employment, and any other position of trust, in the HEREIU and any of its constituent entities, including, but not limited to, Local 69 and the Local 69 Funds. The Monitor also prohibited the union from making any further payments of any kind to Agathos, except for fully vested pension payments.

Appellant filed a notice of appeal of the Monitor's October 15, 1996 decision on November 15, 1996. Appellant filed a second notice of appeal of the Monitor's November 25, 1996 decision on January 17, 1997. For the purposes of efficiency, this Court consolidated both appeals to be heard together.

## II. DISCUSSION

Appellant does not challenge any of the findings of fact supporting the Monitor's decision. Instead, appellant sets forth the following procedural and jurisdictional issues: (1) that the Monitor did not possess jurisdiction under the consent decree until January 9, 1997, thus rendering his October 15, 1996 and November 25, 1996 decisions invalid; (2) that the Monitor exceeded his jurisdiction under the consent decree by permanently barring appellant from office, membership or employment with the union; (3) that the Monitor exceeded his jurisdiction under the consent decree by exercising disciplinary authority against appellant over charges based on conduct prior to the enactment of the consent decree; and (4) that the Monitor abused his discretion under the consent decree by subpoenaing appellant to testify at the hearing before the Monitor permitted appellant to present witnesses to show that the consent decree did not grant the Monitor disciplinary power over past conduct, but only over ongoing conduct.

1. *Appellant's claim that the consent decree was not properly filed when he was disciplined*

Appellant claims that the Monitor's disciplinary actions against him were invalid since the consent decree was not filed at the time of the hearing. *See* Appellant's Brief at 11. Appellant contends that on January 10, 1997, "this Court ordered that even though the consent decree was never filed with the Clerk of the Court since September 1995, it would be deemed to have been filed as of that *time—nunc pro tunc—and* thereby the Court gave the consent decree the legal force and effect that it was lacking in between." *See* Appellant's Brief at 10. However, appellant's argument is meritless.

As evidenced by the Court Docket, the consent decree in this matter was signed by this Court and filed by the Clerk of the Court on September 5, 1995, and entered on the docket on September 12, 1995. *See* Court Docket item 3. Moreover, at the September 5, 1995 hearing, this Court stated that:

Well, I've had the chance to review the draft of the complaint and the consent decree, and now the actual complaint and consent decree that have come here, and I find that the parties have consented to it and that it is fair and equitable and in the best interest of all parties; and that Mr. Muellenberg is qualified and appropriate to serve as a monitor, and *I will therefore execute the consent decree.*

September 5, 1995 Transcript at 6 (emphasis added). Therefore, appellant's argument that the consent decree was not entered until January 10, 1997 is incorrect as the record and court docket reflect the fact that the Order was executed in September 1995.

In early January 1997, the Monitor sought this Court's intervention because he was not receiving copies of documents as the Clerk of the Court did not recognize the Monitor as a party to the litigation. As a result, this Court entered an Order on January 10, 1997 appointing "Kurt W. Muellenberg as monitor in the above-captioned matter, pursuant to the consent decree filed on September 5, 1995, nunc pro tunc." *See* January 10, 1997 Order. The purpose of this Order was merely to amend the Clerk of the Court's service list so as to include the Monitor.

■ Appellant argues that this Court's January 10, 1997 Order should not have been given *nunc pro tunc* effect to September 5, 1995, because it was "not merely a clerical task, but in effect an act that changes and greatly prejudices [appellant's] legal status by virtue of the Monitor's prior decisions against [appellant]." *See* Appellant's Brief at 11. Appellant's argument, however, is founded on the erroneous belief that the consent decree was not filed and entered in September 1995. *See supra.* Nevertheless, even if appellant were correct, the January 10, 1997 Order was properly given *nunc pro tunc* effect. "An act *nunc pro tunc* is an 'entry made now of something actually previously done to have effect of former date, [previously] omitted through inadvertence or mistake.'" *Barden v. Keohane,* 921 F.2d 476, 477 n. 2 (3d Cir.1990) (quoting BLACK'S LAW DICTIONARY at 964); *see also Maksymchuk v. Frank,* 987 F.2d 1072, 1075 n. 2 (4th Cir. 1993) (*"Nunc pro tunc* merely describes inherent power of court to make its records speak the truth, *i.e.,* to correct [the] record at [a] later date to reflect what actually occurred."). The record clearly states that this Court was appointing Kurt Muellenberg as monitor and executing the consent decree on September 5, 1995. *See* September 5, 1995 Transcript at 6. Thus, the Order entered on January 10, 1997, did no more than "make the record speak the truth" and did not, as appellant contends, change a legal status. Consequently, Agathos' appeal of the Monitor's decisions on this ground must be rejected.

2. *Appellant's claim that the Monitor exceeded his jurisdiction under the consent decree by permanently barring appellant from office, membership or employment with the union*

■ Appellant claims that the Monitor exceeded his jurisdiction under the consent decree by permanently barring him from employment with the Local 69 Funds. Appellant contends that "there is not a single reference in the consent decree that expands such term [constituent entities] so as to include Local 69's funds within such the [sic] definition and therefore allow the Monitor to discipline [appellant] by banning him for life from employment with Local 69's funds." *See* Appellant's Brief at 17.

The third "Whereas" clause of the consent decree states:

WHEREAS, defendants acknowledge that historically, the Hotel Employees and Restaurant Employees International Union (hereinafter the "HEREIU" or the "union") and various constituent entities of the union (which are referred to hereinafter as *including* HEREIU Districts, District Councils, local unions and other "subordinate bodies" of HEREIU as that term is defined in the HEREIU Constitution, but which do not include the HEREIU Pension and Health Welfare Funds) have suffered from an external induced corruption problem;

Consent Decree, Third Whereas Clause at 2 (emphasis added). The use of the word "including" makes clear that the definition provided was not a finite list, but instead, merely a list of examples. Therefore, appellant's argument that the consent decree does not include the Local 69 Funds within such a definition is unavailing. Consequently, Agathos' appeal of the Monitor's November 25, 1996 decision on this ground must be rejected.

3. *Appellant's claim that the Monitor exceeded his jurisdiction under the consent decree by exercising disciplinary authority against appellant on charges based on conduct prior to the enactment of the consent decree*

■ Appellant maintains that the Monitor exceeded his authority by disciplining appel-

lant based upon conduct which occurred prior to the enactment of the consent decree. The consent decree provides that the Monitor may remove or otherwise discipline

> any officer, representative, agent, employee or person holding a position of trust in the HEREIU and its constituent entities when such person *engages or has engaged* in actions or inactions which: (i) violate the injunctive prohibitions of this Consent Decree, (ii) violate any criminal law involving the operation of a labor organization or employee benefit plan, or (iii) further the direct or indirect influence of any organized crime group or the threat of such influence now or in the future.

Consent Decree ¶ 12. With respect to members, the consent decree similarly provides as follows:

> [T]he Monitor shall have the right and power to impose discipline up to and including expulsion from union membership when a member of the HEREIU or its constituent entities *engages or has engaged* in actions or inactions which: (a) violate the injunctive prohibitions of this Consent Decree; (b) violate any criminal law involving the operation of a labor organization or employee benefit plan; or (c) further the direct or indirect influence of any organized crime group or the threat of such influence now or in the future.

*Id.* ¶ 13. As evidenced from the plain language of the consent decree, the Monitor may consider certain past actions or inactions of HEREIU members and officers in taking disciplinary action.[1] Therefore, the Monitor did not exceed his authority in considering Agathos' past conduct in taking disciplinary action.[2] Consequently, Agathos' appeal on this ground must be rejected.

4. *Appellant's claim that the Monitor abused his discretion under the consent decree by subpoenaing appellant to testify at the hearing before the Monitor permitted appellant to present witnesses to show that the consent decree did not grant the Monitor disciplinary power over past actions. but only over ongoing conduct*

As this Court has found that pursuant to the consent decree the Monitor may consider certain past actions or inactions of HEREIU members and officers in taking disciplinary action, appellant's fourth ground for appeal is moot. *See also supra n. 2.*

## III. CONCLUSION

For the foregoing reasons, the Court will dismiss Agathos' appeal and affirm the October 16, 1996 and November 25, 1996 deci-

---

1. Appellant argues that it was the intent of the parties to give the Monitor authority only over prospective conduct. See Appellant's Brief at 14 (citing Affidavit of Robert J. Rotatori, previously submitted to this Court). However,

> [f]or the purposes of enforcement, a consent judgment is to be interpreted as a contract, to which the governing rules of contract interpretation apply. The court must discern the scope of a consent judgment by review of what is within the four corners of the consent, not to reference to what might satisfy the purposes of one of the parties to it. Where the contract or agreement is unambiguous, parole evidence of prior inconsistent terms or negotiations is inadmissible to demonstrate intent of the parties. A contract is ambiguous if, after hearing evidence presented by the parties, the court determines that objective indicia exist to support the view that the terms of the contract are susceptible of different meanings.

*Harley–Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir.1994) (internal quotation marks omitted). As this Court finds the consent decree language to be unambiguous, and not susceptible to different interpretations, appellant's parole evidence as to the intent of the parties is inadmissible.

2. Even if this Court were to find that the Monitor could not consider certain past actions or inactions of HEREIU members and officers in taking disciplinary action, Agathos' appeal on this point would be moot since in the November 25, 1996 decision, the Monitor found that sufficient evidence existed of appellant's conduct after the execution of the consent decree on which the Monitor could base his disciplinary action. *See* November 25, 1996 Decision of the Monitor at 52–54, 71 (finding that appellant was and continues to be a Genovese Crime Family Associate and has knowingly associated with organized crime family members and associates both before and after the entry of the consent decree, in violation of ¶¶ 12(I) and 13(a) of the consent decree); id. at 60, 75 (finding that appellant was involved in a continuing cycle of embezzlements between January 1989 and September 1996); *id.* at 55–58, 65–66, 74 (finding that appellant violated the consent decree's injunctive prohibitions by continuing to allow himself, a barred person pursuant to ¶ 7(b) of the consent agreement, to exercise control or influence over the HEREIU's affairs).

sions of the Monitor.  An appropriate form of Order is filed herewith.

## ORDER

For the reasons set forth in the Memorandum Opinion filed in the above-captioned matter on this date;

IT IS on this 6th day of May 1997;

ORDERED that the October 16, 1996 and November 25, 1996 decisions of the Court Appointed Monitor Kurt W. Muellenberg be and hereby are AFFIRMED; and it is further

ORDERED that John N. Agathos, Sr.'s appeals of the October 16, 1996 and November 25, 1996 decisions of the Court Appointed Monitor Kurt W. Muellenberg be and hereby are DISMISSED.